IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

|  |  |  |
|---|---|---|
| AVA SMITH, individually, and as heir to the Estate of Laison Jarvus Crenshaw, <br> *Plaintiff* | § § § § | |
| v. | § § | CIVIL ACTION NO. 6:26-cv-00109 |
| AUSTIN DUBOIS, BENJAMIN BROWN, DAMON GRIFFIN, CONRADDO JONSE, SECURITY GUARD F/N/U O'DELL, JENNIFER WARD, M.D., and ASCENSION SETON d/b/a  DELL SETON MEDICAL CENTER AT THE UNIVERSITY OF TEXAS, <br> *Defendants*. | § § § § § § § § § § § | JURY REQUESTED |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Ava Smith, individually and as heir to the Estate of Laison Jarvus Crenshaw, files this Original Complaint against Defendants Austin Dubois, Benjamin Brown, Damon Griffin, Conraddo Jonse, Security Guard F/N/U O'Dell, Jennifer Ward, M.D., and Ascension Seton d/b/a Dell Seton Medical Center at the University of Texas, and would respectfully show the Court as follows:

## INTRODUCTION

This case arises from the wrongful death of Laison Jarvus Crenshaw.  Plaintiff Ava Smith is the mother of Crewshaw.  On February 21, 2024, to address her son's mental health concerns, Smith took him to Dell Seton Medical Center at the University of Texas.  Instead of receiving the care that he needed, Crenshaw was a victim of excessive force and neglect that directly led to his death.  Having been forcefully and unnecessarily thrown to the floor in his hospital room, he was

**PLAINTIFF'S ORIGINAL COMPLAINT** - Page 1

handcuffed while in a prone position with his feet elevated. Additionally, Defendant Dubois placed his knee in Crenshaw's back which further restricted his ability to breathe. All of this took place with medical personnel standing just feet away. Despite the life-threatening danger of such a positional restraint, none of the Defendants or hospital personnel made any attempt to save Mr. Crenshaw before he died of a cardiovascular event that was directly caused by the altercation and restraint.

## I.    PARTIES

1.    Plaintiff Ava Smith is a resident of Travis County, Texas.

2.    Defendant Austin Dubois is a resident of Travis County, Texas and may be served at 2201 Robert Dedman Drive, Austin, Texas 78712.

3.    Defendant Benjamin Brown is a resident of Travis County, Texas and may be served at his place of employment at 1500 Red River Street, Austin, Texas 78701.

4.    Defendant Damon Griffin is a resident of Travis County, Texas and may be served at his place of employment at 1500 Red River Street, Austin, Texas 78701.

5.    Defendant Conraddo Jonse is a resident of Travis County, Texas and may be served at his place of employment at 1500 Red River Street, Austin, Texas 78701.

6.    Defendant Security Guard F/N/U O'Dell is a resident of Travis County, Texas and may be served at his place of employment at 1500 Red River Street, Austin, Texas 78701.

7.    Defendant Jennifer Ward, M.D. is a resident of Travis County, Texas and may be served at her place of employment at 1500 Red River Street, Austin, Texas 78701.

8.    Defendant Ascension Seton d/b/a Dell Seton Medical Center at the University of Texas is a corporate entity whose principal place of business is Travis County, Texas and may be

**PLAINTIFF'S ORIGINAL COMPLAINT**  - Page 2

served by serving Corporation Service Company (CSC) at 211 E. 7th Street, #620, Austin Texas, 78701.

## II.   JURISDICTION AND VENUE

9.   The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.  Supplemental jurisdiction over the state law claims asserted herein is proper under 28 U.S.C. § 1367, because those claims are so related to the claims under § 1983 that they are part of the same case.

10.   Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in that district.  Austin is the proper division since the events occurred at Dell Seton Medical Center at the University of Texas.

## III.   FACTS

11.   Plaintiff Ava Smith is the mother of Laison Jarvus Crenshaw.  On February 21, 2024, Plaintiff determined that her son needed medical assistance to address his mental health issues and took him to Dell Seton Medical Center at the University of Texas, in Austin, Texas.

12.    Smith and Crenshaw arrived at Dell Seton Medical Center at the University of Texas at approximately 4:30 p.m., where he was admitted to the care of the hospital and its medical professionals.

13.   As the evening progressed, Crenshaw was moved to a private room in the hospital.

14.    Both before midnight, and shortly after midnight, Crenshaw can be seen on video standing near the front of his room simply looking around. Despite claims by the security guards that Crenshaw was acting in a threatening manner, the video flatly contradicts that allegation. Crenshaw was not acting in a disruptive or threatening manner and was not in an agitated state.

PLAINTIFF'S ORIGINAL COMPLAINT  - Page 3

15.    At approximately 1:23 a.m. on the morning of February 22, 2024, security guards, including Benjamin Brown, approached Crenshaw. Within two minutes, Brown violently bull-rushed Crenshaw, forcing him into the wall of his hospital room and then to the floor. This was done with such force that the impact of Crenshaw's head left a significant dent in the sheetrock of the room's wall.

16.    After a few more minutes, Defendant Austin Dubois arrived on the scene. Despite Crenshaw already being restrained by security guards, Dubois made the decision to handcuff Crenshaw, who was being restrained in a prone position. Dubois placed the handcuffs on Crenshaw in such a manner that it caused Crenshaw's arms to be raised high above his back.

17.    Subsequent to Crenshaw being handcuffed, Dubois placed his knee against Crenshaw's mid-back with significant pressure. Dubois pressed his knee on Crenshaw's back for up to one minute, even after Crenshaw was already detained, handcuffed, and lying prone on the floor.

18.    Approximately 10 minutes after his encounter with Crenshaw, Dubois decided to activate his body-worn camera, which also contains audio.

19.    A voice can be heard asking whether Crenshaw should be turned onto his side, but Dubois is heard instructing others to leave Crenshaw in his handcuffed, face down, prone position.

20.    Soon after activating his body-worn camera, Dubois checks Crenshaw's pulse. Although appearing unresponsive, Crenshaw was still alive.

21.    Throughout much of the above-described encounter, hospital staff, nurses, and physicians employed by Dell Seton Medical Center at the University of Texas, and Jennifer Ward, M.D., were standing close by and could directly observe that Crenshaw was handcuffed in

a prone position and could observe Dubois administering pressure to Crenshaw's back while Crenshaw was in the handcuffed, prone position.

22.    Prior to and during the above-described encounter, Dr. Ward twice ordered and administered sedatives that would further inhibit Crenshaw's breathing process.

23.    Notwithstanding the known medical fact that sedatives reduce a person's respiratory rate, neither Dr. Ward nor any other physician or medical staff monitored Crenshaw's vital signs after he was given the sedatives, despite being in a position that would further compromise his ability to breathe.

24.    Defendants Griffin, Jonse, and O'Dell were present in the room during the above-described encounter. They witnessed the extreme force used against Crenshaw by Defendants Brown and Dubois, and were present and remained in the room as the additional force was administered to a handcuffed and prone Crenshaw as Dubois had his knee in Crenshaw's back. From their position in the room, Griffin, Jonse and O'Dell observed Crenshaw's deteriorating medical condition even as questions arose in the room as to whether he was still breathing, yet they failed to speak up or intervene as Crenshaw deteriorated, lost consciousness, and became unresponsive.

25.    Medical employees of Ascension Seton d/b/a Dell Seton Medical Center at the University of Texas, including nurses and Dr. Ward, observed what was occurring with Crenshaw's restraint and his deteriorating medical condition. Yet they did nothing for approximately 20 minutes until Crenshaw reached the point where he was no longer breathing.

26.    As a result of the actions of the named defendants and other Ascension Seton employees, including the excessive force, positional restraint, and the complete failure to recognize Crenshaw's dire medical condition, he became unresponsive.

27.    Approximately 20 minutes after Defendant Brown's initial contact with Crenshaw, medical staff finally recognized the medical crisis and cleared the room.  As additional medical staff entered the room, Crenshaw was still handcuffed in the prone position.

28.    Despite lifesaving efforts, Crenshaw never regained consciousness and was pronounced dead on February 27, 2024.

### *Wrongful Death and Survival Causes of Action*

29.    To the extent required procedurally, Plaintiff invokes the Texas Wrongful Death Statute (Tex. Civ. Prac. & Rem. Code § 71.001, *et. seq*.). The wrongful death Plaintiff is Laison Jarvus Crenshaw's surviving mother Ava Smith, who seeks to recover all damages permitted by that statute and federal law.

30.    To the extent required procedurally, Plaintiff invokes the Texas Survival Statute (Tex. Civ. Prac. & Rem. Code § 71.021, *et. seq*.).  The claims of the Estate of Laison Jarvus Crenshaw are brought by Ava Smith as heir to the Estate, and seeks all damages permitted by that statute and federal law.

31.    Plaintiff Ava Smith, the mother of Laison Jarvus Crenshaw, brings survival claims as the heir to Laison Jarvus Crenshaw's estate. Crenshaw died intestate. He had no outstanding debts.  No administration of his estate is necessary and none is pending, meaning Smith can bring survival claims as an heir to his estate. These claims are for Crenshaw's conscious pain and suffering prior to his death but caused by Defendants' misconduct.

### *Claims Brought Pursuant to the Texas Medical Liability Act*

32.    A healthcare liability claim has three elements:  (1) a physician or healthcare provider defendant, (2) a claim that concerns treatment, lack of treatment, or a departure from accepted standards of medical care, healthcare, or safety, or professional or administrative

services directly related to healthcare, and (3) the complained of act or omission proximately caused the injury to the claimant.  In this case, the plaintiff must also prove proximate cause resulting in death.

33.     Ascension Seton, Jennifer Ward, M.D., and medical staff, nurses and physicians employed by Ascension Seton qualify as healthcare providers under the Texas Medical Liability Act (TMLA).  Accordingly, all claims against Ascension Seton, Jennifer Ward, M.D., and medical staff, nurses and physicians employed by Ascension Seton are brought pursuant to the TMLA and assert that there were breaches of the standard of care that proximately caused Crenshaw's death.

34.     With respect to Defendants Brown, Griffin, Jonse and O'Dell, Plaintiffs do not concede that they are healthcare providers pursuant to the TMLA.  Pleading alternatively, if they are determined to be healthcare providers, Plaintiff asserts claims against them pursuant to the TMLA.

## IV.     FIRST CAUSE OF ACTION: VIOLATIONS OF CONSTITUTIONALLY PROTECTED RIGHTS PURSUANT TO 42 U.S.C. § 1983 AGAINST AUSTIN DUBOIS

35.     All above paragraphs are incorporated herein by reference.

36.     At the time of the events described above, Austin Dubois was acting under color of the laws and regulations of the State of Texas and the University of Texas at Austin Police Department (UTAPD) and in the course and scope of his employment for the UTAPD.

### Excessive Force

37.     The use of excessive force by Defendant Dubois was an unreasonable physical seizure of Mr. Crenshaw under the Fourth Amendment of the United States Constitution.  His use of excessive force was not objectively reasonable under the totality of the circumstances, and the

force he used against Plaintiff was applied intentionally and/or recklessly to cause harm to him. The force used was completely unwarranted and unjustified for all the reasons set forth above. No objectively reasonable officer would believe that Crenshaw—restrained, surrounded and subdued—posed a threat of harm justifying the prolonged use of force. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that restraining him in a prone position, with handcuffs applied and applying pressure to his back, was a violation of Crenshaw's Fourth Amendment rights. It was further clearly established that an officer engages in an objectively unreasonable application of force by continuing to kneel on the back of an individual who has been subdued. The U.S. Department of Justice has notified law enforcement departments as far back as 1995 that prone restraint could cause positional asphyxia and death.

38.    As alleged above, Dubois intentionally or recklessly subjected Crenshaw to unlawful mistreatment by applying force, including pressing his knee on Crenshaw's back for up to one minute, even after Crenshaw was already detained, handcuffed, and lying prone on the floor.  Dubois later admitted that he saw no signs that Mr. Crenshaw was breathing.

**Denial of Medical Care**

39.    In addition, Dubois denied Crenshaw medical care. Despite showing no signs of breathing and multiple indications that Crenshaw was in severe medical distress, Dubois failed to stop restraining Crenshaw and render aid. Dubois was aware of a risk of injury to Crenshaw that he did nothing to alleviate. As stated above in the Facts section, despite a rising level of concern as to whether or not Crenshaw was still breathing, Dubois failed to request medical care even though physicians and medical staff were standing just feet away. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that failing to stop such restraint

and secure medical assistance for a person in obvious life-threatening medical distress was a denial of Crenshaw's constitutional rights.

40.    As a direct result of Defendant Dubois's conduct, Crenshaw suffered physical and mental/emotional injuries that resulted in his death and he was deprived of his constitutional rights, all to his damage. Dubois's actions violated Crenshaw's rights guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

## V.    SECOND CAUSE OF ACTION: VIOLATIONS OF CONSTITUTIONALLY PROTECTED RIGHTS PURSUANT TO 42 U.S.C. § 1983 AGAINST BENJAMIN BROWN

41.    All above paragraphs are incorporated herein by reference.

42.    At the time of the events described above, Benjamin Brown was acting under color of the laws and regulations of the State of Texas.

### Excessive Force

43.    Within two minutes of first encountering Crenshaw, Brown violently bull-rushed Crenshaw, forcing him into the wall of his hospital room and then to the floor.  This was done with such force that the impact of Crenshaw's head left a significant dent in the sheetrock of the room's wall. Brown also assisted Dubois and participated in restraining Crenshaw in the prone position, which resulted in Crenshaw's death.  The use of excessive force by Defendant Brown was an unreasonable physical seizure of Crenshaw under the Fourth Amendment of the United States Constitution.  His use of excessive force was not objectively reasonable under the totality of the circumstances, and the force he used against Crenshaw was applied intentionally and/or recklessly to cause harm to him.  The force used was completely unwarranted and unjustified for all the reasons set forth above. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that using force greater than necessary and using force on a person

PLAINTIFF'S ORIGINAL COMPLAINT  - Page 9

after he has been handcuffed and subdued is excessive and a violation of Crenshaw's constitutional rights.

44.    As a direct result of Defendant Brown's conduct, Crenshaw suffered physical and mental/emotional injuries that resulted in his death and he was deprived of his constitutional rights, all to his damage. Dubois's actions violated Crenshaw's rights guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

### Denial of Medical Care

45.    In addition, Brown denied Crenshaw medical care. Despite showing no signs of breathing and multiple indications that Crenshaw was in severe medical distress, Brown failed to stop restraining Crenshaw and render aid. Brown was aware of a risk of injury to Crenshaw that he did nothing to alleviate. As stated above in the Facts section, despite a rising level of concern as to whether or not Crenshaw was still breathing, Brown failed to request medical care even though physicians and medical staff were standing just feet away. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that failing to stop such restraint and secure medical assistance for a person in obvious life-threatening medical distress was a denial of Crenshaw's constitutional rights.

46.    As a direct result of Defendant Brown's conduct, Crenshaw suffered physical and mental/emotional injuries that resulted in his death and he was deprived of his constitutional rights, all to his damage. Brown's actions violated Crenshaw's rights guaranteed by the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.

### VI.    THIRD CAUSE OF ACTION: NEGLIGENCE AGAINST BENJAMIN BROWN

47.    All above paragraphs are incorporated herein by reference.

48.     At the time of the events described above, Benjamin Brown had a duty to exercise reasonable care in the performance of his job duties in a manner that did not injure patients in the hospital where he worked or allow others to injure patients. In violation of this duty, Brown acted negligently in his use of force on Crenshaw -- who was known to hospital staff to be mentally ill -- and in assisting Dubois in restraining Crenshaw. Brown failed to exercise ordinary care when he chose not to use reasonable measures before resorting to force on Crenshaw, especially force that was far excessive to any perceived or actual need. Moreover, Brown witnessed Crenshaw's medical condition deteriorate as he was holding on to Crenshaw and restraining him, yet he did not stop what he was doing until the medical team in the room belatedly took over after Crenshaw had stopped breathing. Brown was also negligent in failing to stop and render aid to Crenshaw.

49.     Brown's conduct as described above was also a breach of the standard of care and was a proximate cause of Crenshaw's harm.

50.     As a direct result of Defendant Brown's negligence, Crenshaw suffered physical and mental/emotional injuries that resulted in his death.

## VII.    FOURTH CAUSE OF ACTION: VIOLATIONS OF CONSTITUTIONALLY PROTECTED RIGHTS PURSUANT TO 42 U.S.C. § 1983 AGAINST DAMON GRIFFIN

51.     All above paragraphs are incorporated herein by reference.

52.     At the time of the events described above, Damon Griffin was acting under color of the laws and regulations of the State of Texas.

53.     An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. This is clearly

established law; the Fifth Circuit has recognized a claim for bystander liability since at least 1995. *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).

54.     Griffin failed to protect Crenshaw by failing to intervene to prevent the excessive force by Defendants Dubois and Brown as pleaded above. Griffin was right there in the hospital room, witnessed the harm these Defendants were doing to Crenshaw, and could have prevented that harm. Yet none of the bodycam footage in the video or audio of the events in Crenshaw's room reflects that Griffin acted or spoke out in any way to prevent the harm that Dubois and Brown were inflicting on Crenshaw or dissuade them from continuing that harm. Griffin's actions were objectively unreasonable and a violation of Crenshaw's constitutional rights.

55.     In addition, Griffin denied Crenshaw medical care. Despite showing no signs of breathing and multiple indications that Crenshaw was in severe medical distress, Griffin failed to stop restraining Crenshaw and render aid. Griffin was aware of a risk of injury to Crenshaw that he did nothing to alleviate. As stated above in the Facts section, despite a rising level of concern as to whether or not Crenshaw was still breathing, Griffin failed to request medical care even though physicians and medical staff were standing just feet away. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that failing to stop such restraint and secure medical assistance for a person in obvious life-threatening medical distress was a denial of Crenshaw's constitutional rights.

56.     As a direct result of Defendant Griffin's conduct, Crenshaw suffered physical and mental/emotional injuries that resulted in his death and he was deprived of his constitutional rights, all to his damage. Griffin's actions violated Crenshaw's constitutional rights and 42 U.S.C. § 1983.

## VIII.   FIFTH CAUSE OF ACTION: NEGLIGENCE
### AGAINST DAMON GRIFFIN

57.     All above paragraphs are incorporated herein by reference.

58.    At the time of the events described above, Damon Griffin had a duty to exercise reasonable care in the performance of his job duties in a manner that did not injure patients in the hospital where he worked or allow others to injure patients. In violation of this duty, Griffin acted negligently in his failure to protect Crenshaw -- who was known to hospital staff to be mentally ill -- from the use of force by Dubois and Brown. Griffin witnessed the extreme force used against Crenshaw by Defendants Dubois and Brown, and was present and remained in the room as the additional force was administered to a handcuffed and prone Crenshaw as Dubois had his knee in Crenshaw's back. From his position in the room, Griffin observed Crenshaw's deteriorating medical condition even as questions arose in the room as to whether Crenshaw was still breathing, yet he failed to speak up or intervene as Crenshaw deteriorated, lost consciousness, and became unresponsive.

59.    Griffin's conduct as described above was also a breach of the standard of care and was a proximate cause of Crenshaw's harm.

60.    As a direct result of Defendant Griffin's negligence, Crenshaw suffered physical and mental/emotional injuries that resulted in his death.

## IX.    SIXTH CAUSE OF ACTION: VIOLATIONS OF CONSTITUTIONALLY PROTECTED RIGHTS PURSUANT TO 42 U.S.C. § 1983 AGAINST CONRADDO JONSE

61.    All above paragraphs are incorporated herein by reference.

62.    At the time of the events described above, Conraddo Jonse was acting under color of the laws and regulations of the State of Texas.

63.    An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. This is clearly

PLAINTIFF'S ORIGINAL COMPLAINT  - Page 13

established law; the Fifth Circuit has recognized a claim for bystander liability since at least 1995. *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).

64.    Jonse failed to protect Crenshaw by failing to intervene to prevent the excessive force by Defendants Dubois and Brown as pleaded above. Jonse was right there in the hospital room, witnessed the harm these Defendants were doing to Crenshaw, and could have prevented that harm. Yet none of the bodycam footage in the video or audio of the events in Crenshaw's room reflects that Jonse acted or spoke out in any way to prevent the harm that Dubois and Brown were inflicting on Crenshaw or dissuade them from continuing that harm. Jonse's actions were objectively unreasonable and a violation of Crenshaw's constitutional rights.

65.    In addition, Jonse denied Crenshaw medical care. Despite showing no signs of breathing and multiple indications that Crenshaw was in severe medical distress, Jonse failed to stop restraining Crenshaw and render aid. Jonse was aware of a risk of injury to Crenshaw that he did nothing to alleviate. As stated above in the Facts section, despite a rising level of concern as to whether or not Crenshaw was still breathing, Jonse failed to request medical care even though physicians and medical staff were standing just feet away. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that failing to stop such restraint and secure medical assistance for a person in obvious life-threatening medical distress was a denial of Crenshaw's constitutional rights.

66.    As a direct result of Defendant Jonse's conduct, Crenshaw suffered physical and mental/emotional injuries that resulted in his death and he was deprived of his constitutional rights, all to his damage. Jonse's actions violated Crenshaw's constitutional rights and 42 U.S.C. § 1983.

## X.    SEVENTH CAUSE OF ACTION: NEGLIGENCE AGAINST CONRADDO JONSE

67.    All above paragraphs are incorporated herein by reference.

68.    At the time of the events described above, Conraddo Jonse had a duty to exercise reasonable care in the performance of his job duties in a manner that did not injure patients in the hospital where he worked or allow others to injure patients. In violation of this duty, Jonse acted negligently in his failure to protect Crenshaw -- who was known to hospital staff to be mentally ill -- from the use of force by Dubois and Brown. Jonse witnessed the extreme force used against Crenshaw by Defendants Dubois and Brown, and was present and remained in the room as the additional force was administered to a handcuffed and prone Crenshaw as Dubois had his knee in Crenshaw's back. From his position in the room, Jonse observed Crenshaw's deteriorating medical condition even as questions arose in the room as to whether Crenshaw was still breathing, yet he failed to speak up or intervene as Crenshaw deteriorated, lost consciousness, and became unresponsive.

69.    Jonse's conduct as described above was also a breach of the standard of care and was a proximate cause of Crenshaw's harm.

70.    As a direct result of Defendant Jonse's negligence, Crenshaw suffered physical and mental/emotional injuries that resulted in his death.

## XI.    EIGHTH CAUSE OF ACTION: VIOLATIONS OF CONSTITUTIONALLY PROTECTED RIGHTS PURSUANT TO 42 U.S.C. § 1983 AGAINST SECURITY GUARD F/N/U O'DELL

71.    All above paragraphs are incorporated herein by reference.

72.    At the time of the events described above, Security Guard F/N/U O'Dell was acting under color of the laws and regulations of the State of Texas.

73.    An officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. This is clearly

PLAINTIFF'S ORIGINAL COMPLAINT  - Page 15

established law; the Fifth Circuit has recognized a claim for bystander liability since at least 1995. *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995).

74. O'Dell failed to protect Crenshaw by failing to intervene to prevent the excessive force by Defendants Dubois and Brown as pleaded above. O'Dell was right there in the hospital room, witnessed the harm these Defendants were doing to Crenshaw, and could have prevented that harm. Yet none of the bodycam footage in the video or audio of the events in Crenshaw's room reflects that O'Dell acted or spoke out in any way to prevent the harm that Dubois and Brown were inflicting on Crenshaw or dissuade them from continuing that harm. O'Dell's actions were objectively unreasonable and a violation of Crenshaw's constitutional rights.

75. In addition, O'Dell denied Crenshaw medical care. Despite showing no signs of breathing and multiple indications that Crenshaw was in severe medical distress, O'Dell failed to stop restraining Crenshaw and render aid. O'Dell was aware of a risk of injury to Crenshaw that he did nothing to alleviate. As stated above in the Facts section, despite a rising level of concern as to whether or not Crenshaw was still breathing, O'Dell failed to request medical care even though physicians and medical staff were standing just feet away. It was clearly established in the Fifth Circuit prior to the events that transpired to Crenshaw that failing to stop such restraint and secure medical assistance for a person in obvious life-threatening medical distress was a denial of Crenshaw's constitutional rights.

76. As a direct result of Defendant O'Dell's conduct, Crenshaw suffered physical and mental/emotional injuries that resulted in his death and he was deprived of his constitutional rights, all to his damage. O'Dell's actions violated Crenshaw's constitutional rights and 42 U.S.C. § 1983.

### XII.   NINTH CAUSE OF ACTION: NEGLIGENCE AGAINST SECURITY GUARD F/N/U O'DELL

77. All above paragraphs are incorporated herein by reference.

78. At the time of the events described above, Security Guard F/N/U O'Dell had a duty to exercise reasonable care in the performance of his job duties in a manner that did not injure patients in the hospital where he worked or allow others to injure patients. In violation of this duty, O'Dell acted negligently in his failure to protect Crenshaw -- who was known to hospital staff to be mentally ill -- from the use of force by Dubois and Brown. O'Dell witnessed the extreme force used against Crenshaw by Defendants Dubois and Brown, and was present and remained in the room as the additional force was administered to a handcuffed and prone Crenshaw as Dubois had his knee in Crenshaw's back. From his position in the room, O'Dell observed Crenshaw's deteriorating medical condition even as questions arose in the room as to whether Crenshaw was still breathing, yet he failed to speak up or intervene as Crenshaw deteriorated, lost consciousness, and became unresponsive.

79. O'Dell's conduct as described above was also a breach of the standard of care and was a proximate cause of Crenshaw's harm.

80. As a direct result of Defendant O'Dell's negligence, Crenshaw suffered physical and mental/emotional injuries that resulted in his death.

### XIII.   TENTH CAUSE OF ACTION: NEGLIGENCE AGAINST JENNIFER WARD, M.D.

81. All above paragraphs are incorporated herein by reference.

82. At the time of the events described above, Jennifer Ward, M.D. had a duty to provide competent medical care to her patient Crenshaw. In violation of this duty, Dr. Ward acted negligently in her treatment of Crenshaw -- who was known to Dr. Ward to be mentally ill -- by refraining from doing anything to intervene or protect her patient from harm from Defendants Dubois and Brown, and in twice giving Crenshaw a sedative that exacerbated his breathing difficulties brought on from the prone restraint she witnessed. Dr.

PLAINTIFF'S ORIGINAL COMPLAINT  - Page 17

Ward was also negligent by failing to monitor Crenshaw's vital signs after sedatives were given and observing him in a position that further restricted his ability to breathe.

83.    Dr. Ward either negligently failed to recognize that Crenshaw was in grave danger, or simply did not care as she stood by doing nothing at all to help him for 15 minutes while witnessing Crenshaw's distress and deteriorating medical condition. Dr. Ward abjectly failed to meet the standard of care in providing medical services to Crenshaw. Her actions were a breach of the standard of care and caused Crenshaw harm. Her actions and inactions were a cause-in-fact of Crenshaw's death.

84.    As a direct result of Dr. Ward's negligence, Crenshaw suffered physical and mental/emotional injuries that resulted in his death. Crenshaw's death was the foreseeable consequence of Dr. Ward's failure to provide competent medical care to him.

85.    Moreover, Dr. Ward's actions and inactions as described above involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Crenshaw, harm that manifested in his death.

86.    Dr. Ward had actual, subjective awareness of this precise risk from her professional background in treating patients with mental illness (including patients in the custody of law enforcement or under restraint), but consciously ignored this risk.

### XIV.   ELEVENTH CAUSE OF ACTION: NEGLIGENCE AGAINST ASCENSION SETON D/B/A DELL SETON MEDICAL CENTER AT THE UNIVERSITY OF TEXAS

87.    All above paragraphs are incorporated herein by reference.

88.    As described above, Ascension Seton is vicariously liable for the negligence of all medical staff employees, including but not limited to physicians, nurses, medical aides, and all others who were present during the above-described events and were negligent in treating

PLAINTIFF'S ORIGINAL COMPLAINT  - Page 18

Crenshaw, failure to treat Crenshaw, failure to recognize or respond to his increasing medical distress, and/or failing to protect their patient from the excessive force of others, including Ascension Seton employees.

89.     As described above, Ascension Seton is also vicariously liable for the negligence of Jennifer Ward, M.D. for her negligence in treating Crenshaw, failure to treat Crenshaw, failure to recognize or respond to his increasing medical distress, and/or failing to protect her patient from the excessive force of others, including Ascension Seton employees.

90.     As described above, Ascension Seton is vicariously liable for the negligence of its employee security guards in using excessive force in restraining Crenshaw, or failing to protect Crenshaw from harm inflicted on him by others. Smith has described at length above the negligence of Benjamin Brown, Damon Griffin, Conraddo Jonse and F/N/U O'Dell while they were acting in the course and scope of their employment with Ascension Seton during the time that Crenshaw was a patient there.

91.     As a direct result of the negligence of all Ascension Seton employees, including Brown, Griffin, Jonse, O'Dell and Dr. Ward and the other employees referred to herein, Crenshaw suffered physical and mental/emotional injuries that resulted in his death.

## XV.    GROSS NEGLIGENCE

92.     Plaintiff asserts that the negligent conduct of each Defendant was willful and wanton, and was consciously indifferent to the rights, safety and welfare of Crenshaw, and constitutes gross negligence. Plaintiff alleges that the individual Defendants and employees of Defendant Ascension Seton acted with actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights of Crenshaw. Accordingly,

Plaintiff asserts a cause of action for gross negligence and seeks exemplary damages against all Defendants.

## XVI.   DAMAGES

93.     As a direct and proximate result of the above-described acts and omissions of Defendants, and/or individuals for whom Defendant Ascension Seton is legally responsible, Plaintiff, and the interests that Plaintiff legally represents, have suffered serious damages. Plaintiff seeks damages under the Texas wrongful death statute.  Plaintiff additionally seeks damages as the heir of Laison Jarvus Crenshaw's estate under the Texas survival statute. Plaintiff also seeks the same damages under any applicable federal law.

94.     Accordingly, Plaintiff seeks to recover all actual, compensatory, and exemplary damages which have resulted from Defendants' above-described conduct. These damages include, but are not necessarily limited to, the following:

a)      Laison Jarvus Crenshaw's physical suffering;

b)      Laison Jarvus Crenshaw's mental pain and anguish;

c)      All reasonable and necessary burial expenses associated with Laison Jarvus Crenshaw's death;

d)      Plaintiff's mental pain and anguish arising from the death of her son, both past and future;

e)      Plaintiff's damages arising from the loss of companionship and society of her son, both past and future;

f)      Reasonable and necessary attorney's fees in the prosecution of claims under 42 U.S.C. § 1983;

g)      Punitive and/or exemplary damages against all Defendants; and

g)      Pre- and post-judgment interest in accordance with Texas and federal law.

## XVII.  JURY REQUEST

95.     Plaintiff requests a trial by jury.

## XVIII. REQUEST FOR RELIEF

96.     Plaintiff requests that this Court, after final trial of this cause, grant judgment in favor of Plaintiff and against Defendants for compensatory and actual damages and punitive damages as pleaded herein; costs of Court; pre-judgment and post judgment interest as may be allowed; and such other and further relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,

**LAW OFFICES OF DON TITTLE, PLLC**

By:  /s/ *Don Tittle*
Don Tittle
State Bar No. 20080200
don@dontittlelaw.com

8350 North Central Expressway Suite M1085
Dallas, Texas 75206
(214) 522-8400 - Telephone
(214) 389-1002 – Fax

**ATTORNEY FOR PLAINTIFF**